IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| WHC MD, LLC, | * |
| Plaintiff, | * |
| vs. | * Civil Action No. ADC-24-01618 |
| TRANSDEV NORTH AMERICA, INC., | * |
| Defendant. | * |

## MEMORANDUM OPINION

Transdev North America, Inc. ("Defendant" or "Transdev") moves this Court for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. ECF No. 23. Plaintiff, WHC MD, LLC ("WHC"), has responded in opposition. ECF No. 35. Defendant has further filed a reply. ECF No. 38. After considering the motion and the responses thereto, the Court finds that no hearing is necessary.[1] Loc.R. 105.6 (D.Md. 2021). For the reasons stated herein, Defendant's motion is GRANTED in part and DENIED in part.

### FACTUAL AND PROCEDURAL BACKGROUND

A district court "evaluating a motion for judgment on the pleadings must assume that the well-pleaded facts alleged in the complaint are true and must draw all reasonable factual inferences in favor of the non-moving party." *Hamilton Jewelry, LLC v. Twin City*

---

[1] On June 5, 2024, this case was assigned to United States Magistrate Judge A. David Copperthite for all proceedings in accordance with Standing Order 2019-07. ECF No.3. All parties voluntarily consented in accordance with 28 U.S.C. § 636(c). ECF No.22.

1

*Fire Ins. Co., Inc.*, 560 F.Supp.3d 956, 961 (D.Md. 2021). Plaintiff WHC MD, LLC is a limited liability company with its principal place of business located in Maryland. ECF No. 1 at ¶ 4. Transdev North America, Inc., is a Delaware Corporation with its principal place of business in Illinois. *Id.* at ¶ 5.

Both WHC and Transdev provide transportation services, including taxi services. ECF No. 1 at ¶¶ 9-10. Baltimore City purchases transportation services from third-party providers that have included WHC and Transdev, along with entities owned or controlled by Transdev, such as the Yellow Cab Company and SuperTaxi, Inc. *Id.* at ¶ 11. In sum, since 2014, Baltimore City, Transdev, Yellow Cab and/or SuperTaxi have entered agreements to provide transportation services to Baltimore City, including via a now-expired Professional Services Agreement and a related Promissory Note. *Id.* at ¶ 12.

Specifically, Transdev operated a taxicab business in the Baltimore area between 2014 and 2019. *Id.* at ¶ 18. This business operated pursuant to a Professional Services Agreement between the Baltimore City Board of School Commissioners and the Yellow Cab Company, Inc., dated May 28, 2014 (the "2014 PSA"). *Id.* According to Plaintiff, the 2014 PSA expired on June 30, 2019. *Id.* Additionally, Plaintiff contends that Baltimore City overpaid Transdev under the 2014 PSA and, in order to repay Baltimore City, Yellow Cab, as a borrower, and Transdev, as a signatory, entered into a Promissory Note with the Baltimore City Board of School Commissioners, as a lender, and SuperTaxi, as a co-signer. *Id.* at ¶ 19. Plaintiff contends that the Promissory Note, dated March 1, 2018, establishes that "Transdev as a signatory promised to pay back to the Baltimore City Board of School Commissioners approximately $1,123,030.26." *Id.* Plaintiff further

contends that it was and is not a party to the Promissory Note as a borrower, assignee, transferee, or in any way an obligor to Baltimore City. ECF No. 1 at ¶ 20.

While WHC stresses that it was in no way a party to the Promissory Note, it did enter later agreements with the parties mentioned above. *Id.* at ¶¶ 20, 24. Specifically, on July 1, 2019, WHC purchased assets and defined liabilities via contracts it entered with Yellow Cab, 10-10 Transportation, LLC, and Transdev (the "Sellers"). *Id.* at 24. About one month later, and for "substantially the same purpose[,]" the parties entered an Amended and Restated Asset Purchase Agreement ("Asset Purchase Agreement") on August 16, 2019. Under the Asset Purchase Agreement, WHC would collect certain payments from Baltimore City in exchange for transportation services that WHC provided. *Id.* at ¶ 26.

WHC contends that the terms of these agreements, specifically the Professional Services Agreement, the Promissory Note, and the Asset Purchase Agreement, unambiguously establish that WHC was not assigned the Promissory Note or its payment obligations, and did not assume any such obligations when it entered into the Asset Purchase Agreement. ECF No. 1 at ¶ 14. Specifically, WHC cites portions of the Asset Purchase Agreement where Transdev agreed to serve "as primary obligor and not merely as surety" and indemnify WHC for liabilities that arose in connection with "any liability of the Sellers other than Assumed Liabilities." ECF No. 1 at ¶ 15. WHC claims that this promise of indemnification extends to the liability that WHC faces as a result of Yellow Cab's and SuperTaxi's failure to satisfy payment obligations to Baltimore City under the Promissory Note. *Id.* at ¶ 16.

3

As to this alleged failure, in or around June of 2019, Plaintiff claims that "Transdev ceased making payments required by the Promissory Note to Baltimore City in an apparent breach of its payment obligations." *Id.* at ¶ 47. Baltimore City responded by withholding "amounts that it owed to WHC to cover the amounts that Transdev owed under the Promissory Note but ceased to pay to Baltimore City." *Id.* at ¶ 48. WHC noticed that these amounts, exceeding $280,000 at the time Plaintiff filed this Complaint, were withheld by Baltimore City in or around February of 2022. *Id.* at ¶ 49. Both Transdev and WHC have exchanged correspondence in which each party has demanded that the other take responsibility for the amounts owed under the Promissory Note. *Id.* at ¶¶ 50-52. As of the date of Plaintiff's Complaint, and based on Plaintiff's information and belief, $730,000 remains due to Baltimore City as a lender under the Promissory Note. *Id.* at ¶ 21.

On June 4, 2024, WHC filed suit against Transdev in this Court. ECF No. 1. The Complaint pleads three Counts against Transdev, including Count I (Declaratory Judgment), Count II (Breach of Contract – Indemnification) and Count III (Unjust Enrichment). *Id.* at 11-14. Defendant has filed a motion for judgment on the pleadings in response, claiming that Plaintiff has failed to establish liability on the claims it has pled and that it cannot do so. ECF 23-1 at 2. This case was referred to me for all proceedings on June 5, 2024. ECF No. 4. Defendant filed the instant motion for judgment on the pleadings on August 1, 2024. ECF No. 23. Plaintiff responded in opposition on August 15, 2024. ECF No. 35. Defendant filed their reply on August 29, 2024. ECF No. 38.

4

## DISCUSSION

**Standard of Review**

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed.R.Civ.P. 12(c). Motions for judgment on the pleadings are subject to the same standards as motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014) (citing *Butler v. United States*, 702 F.3d 749, 751-52 (4th Cir. 2012)). Accordingly, a district court "evaluating a motion for judgment on the pleadings must assume that the well-pleaded facts alleged in the complaint are true and must draw all reasonable factual inferences in favor of the non-moving party." *Hamilton Jewelry, LLC v. Twin City Fire Ins. Co., Inc.*, 560 F.Supp.3d 956, 961 (D.Md. 2021). When deciding motions under Rule 12(c), courts may also consider documents "attached as an exhibit to a pleading . . . so long as they are integral to the complaint and authentic." *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). "A Rule 12(c) motion should be granted when the pleadings 'fail to state any cognizable claim for relief, and the matter can, therefore, be decided as a matter of law.'" *Hamilton Jewelry, LLC*, 560 F.Supp.3d at 961 (quoting *Rock for Life-UMBC v. Hrabowski*, 594 F.Supp.2d 598, 605 (D.Md. 2009)).

**Analysis**

In its Motion, Defendant seeks a judgment ruling in its favor on all claims raised in Plaintiff's Complaint. *See* ECF No. 23. Plaintiff argues that Defendant "completely fail[s] to show that WHC's allegations are deficient" and that this Court should deny Defendant's motion in its entirety. ECF No. 35 at 2-3.

I.  Declaratory Judgment

As to Count I, Plaintiff requests declaratory judgment that it did not "assume or receive as an assignee from Transdev any payment obligations to Baltimore City under the Asset Purchase Agreement or under the Promissory Note." ECF No. 1 at ¶ 57. However, in their motion, Defendant stresses that the Asset Purchase Agreement and the Amended and Restated Asset Purchase Agreement both explicitly assigned the 2014 PSA to WHC. ECF No. 23-1 at 5. Furthermore, Defendant argues that this assignment, "combined with the PSA being the only vehicle on which the BCBSC business relationship was assigned to WHC and WHC's averments that it would collect revenues from BCBSC in exchange for the provision of transportation services, is fatal to Plaintiff's attempt to shift financial responsibility to Transdev." *Id.*

Defendant also calls the Court's attention to Section 5.15 of the Asset Purchase Agreement, which explicitly calls for WHC to "make all payments due and payable under that certain promissory note, dated as of March 1, 2018[.]" ECF No. 1-3 at 14. At the same time, however, Plaintiff stresses that this same section states that "[b]uyer's obligation to make payments under such note shall cease at such time, if ever, that the Professional Service Agreement, dated May 28, 2014, between the Baltimore City Board of School Commissioners and The Yellow Cab Company, Inc. (the "Baltimore School Contract") is no longer in full force and effect." ECF No. 1-3 at 14.

Other relevant terms in the Asset Purchase Agreement cited by WHC include Section 1.3, governing the assumption of liabilities under the agreement. *Id.* at ¶ 28. This section of the agreement states that the "[b]uyer shall assume and agree to pay, perform,

6

and discharge the liabilities and obligations set forth on Section 1.3 of the Disclosure Schedules arising after the Closing ... but only to the extent that such liabilities do not relate to any breach, default, or violation by Sellers on or prior to the Closing[.]" ECF No. 1-3 at 4. Section 1.3 of the Disclosure Schedule states that assumed liabilities consist solely of "[a]ny liabilities arising under the agreement(s) listed on Section 1.1(b) of the Disclosure Schedules on or after the Closing." *Id.* at 53. Plaintiff correctly points out that Section 1.1(b) does not list the Promissory Note as an assigned contract under the agreement. ECF No. 1 at ¶ 30; ECF 1-3 at 50.

Plaintiff also admits that the Asset Purchase Agreement established certain payment obligations "that WHC assumed from the 2014 PSA[.]" ECF No. 1 at ¶ 33. Plaintiff contends that it assumed these payment obligations on a "conditional and limited basis," citing portions of the Asset Purchase Agreement for support. *Id.* at ¶ 34. According to Plaintiff, this section "expressly terminated WHC's payment obligation on the Promissory Note upon the termination of the 2014 PSA." ECF No. 1 at ¶ 35.

Plaintiff calls further attention to sections of the Asset Purchase Agreement containing an integration clause. *Id.* at ¶ 34. For example, Plaintiff cites Section 8.5 of the Asset Purchase Agreement as evidence that "WHC has no payment obligations to any party except as provided by the Asset Purchase Agreement[.]" *Id.* at ¶ 38. The clause reads, in part, that the "Purchase Agreement and the documents to be delivered hereunder constitute the sole and entire agreement of the parties to this Purchase Agreement with respect to the subject matter contained herein, and supersede all prior and contemporaneous understandings and agreements, both written and oral, with respect to

7

such subject matter." ECF 1-3 at 21. Plaintiff further claims that the parties have not "entered into any amendment or modification establishing that WHC is liable to Baltimore for amounts owed under the Promissory Note," and that any such modification would need to be in writing. ECF No. 1 at ¶ 39.

To adequately state a claim for declaratory judgment, a plaintiff must meet three burdens:

> (1) the complaint alleges an 'actual controversy' between the parties "of sufficient immediacy and reality to warrant issuance of a declaratory judgment"; (2) the court has subject matter jurisdiction over the parties, independent of the request for declaratory relief; and (3) the court does not abuse its discretion in exercising jurisdiction.

*McNulty v. Casero*, 479 F.Supp.3d 200, 208 (D.Md. 2020) (quoting *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004)). The decision to grant a declaratory judgment is one of judicial discretion. *Ass'n of Am. Publishers, Inc. v. Frosh*, 607 F.Supp.3d 614, 617 (D.Md. 2022) (quoting *A.L. Mechling Barge Lines v. United States*, 368 U.S. 324, 331 (1961)). Further, "the Fourth Circuit has held that a district court must have 'good reason' to decline to entertain a declaratory judgment action." *McNulty v. Casero*, 479 F.Supp.3d 200, 209 (quoting *Continental Cas. Co. v. Fuscardo*, 35 F.3d 963, 965 (4th Cir. 1994)).

Here, Plaintiff's Complaint alleges an actual controversy as to the responsibilities of Transdev and WHC under the Asset Purchase Agreement. *See Hogs & Heroes Found., Inc. v. Heroes, Inc.*, 202 F.Supp.3d 490, 495 (D.Md. 2016) (explaining that the actual controversy requirement is a fact-specific inquiry). As to the second element, this Court has subject matter jurisdiction as the parties are diverse. *See Volvo Constr. Equip.*, 386

F.3d at 593 ("[I]f the parties are diverse, a federal court may possess subject matter jurisdiction over a state-law contract dispute."). Lastly, this Court would not abuse its discretion were it to rule on the merits of the declaratory judgment action, as doing so would "serve a useful purpose in clarifying and settling the legal relations in issue," and "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).

It follows that granting Defendant's motion and dismissing Plaintiff's claim for declaratory judgment would be inappropriate at this stage. Defendant's motion fails to argue that Plaintiff's Complaint is deficient as it pertains to any of the above elements that make up a declaratory judgment action, but instead "raises broad arguments that appear intended to counter the declaratory judgment and breach of contract claims generally." *Whiting-Turner Contracting Co. v. Express Servs., Inc.*, 2023 WL 2500270, at *4 (D.Md. Mar. 14, 2023) (denying defendant's motion to dismiss plaintiff's declaratory judgment claim).

On the other hand, Plaintiff's Complaint contains well-plead facts that, when all the inferences are drawn in Plaintiff's favor, suggest that Plaintiff's payment obligations on the Promissory Note terminated when the 2014 PSA expired on June 30, 2019. *See* ECF No. 1 at ¶ 34. While Defendant relies on language in the Asset Purchase Agreement that assigns the 2014 PSA to WHC, ECF No. 23-1 at 7-8, this language, in and by itself, fails to indefinitely assign the duties under the 2018 Promissory Note to Plaintiff. To be sure, the Asset Purchase Agreement does appear to assign certain payment obligations

9

under the Promissory Note to WHC, but the same agreement explicitly limits the scope of this obligation, tying it to the duration of the 2014 PSA. *See* ECF No. 1-3 at 14.

Thus, while facts learned during the discovery process may prove differently, Plaintiff's Complaint stands in stark contrast to those that "fail to state any cognizable claim for relief," *Hamilton Jewelry, LLC*, 560 F.Supp.3d at 961, and therefore cannot be dismissed as a matter of law at this stage. Accordingly, Defendant's motion, as it relates to Plaintiff's claim for declaratory judgment, is denied.

II. Breach of Contract – Indemnification

Defendant further requests that this Court dismiss Count II of Plaintiff's Complaint. Similar to their arguments against Plaintiff's request for declaratory judgment, Defendant claims that Plaintiff has an obligation under the Asset Purchase Agreement to continue to make payments under the Promissory Note. *See* ECF No. 23-1 at 10. Thus, Defendant argues it has no duty to indemnify Plaintiff for what it views as Plaintiff's own failure under the agreed to terms of the Asset Purchase Agreement. *Id.*

Still, Plaintiff contends that "Transdev agreed to indemnify WHC for losses and liabilities at issue in this litigation." *See* ECF No. 1 at ¶ 40. Specifically, Plaintiff stresses language found in Section 8.15 of the Asset Purchase Agreement, which reads, in part, that Transdev "does hereby unconditionally and irrevocably guarantee (as primary obligor and not merely as surety) to Buyer and other parties entitled to indemnification under Section 7.2, and each of their respective successors and assigns, the performance by Sellers of all Sellers' obligations under Section 7.2 of this Purchase Agreement." ECF 1-3 at 23. The section continues, reading that the guarantee "is a continuing guarantee of performance of

the obligations of Sellers and shall be binding upon and enforceable against TNA without regard to any change in the status of TNA as indirect owner of Sellers or any amendment or modification to any of the obligations of Sellers under this Purchase Agreement." *Id.* Thus, Plaintiff contends that the "losses imposed on WHC by Baltimore City and the liabilities that Baltimore City seeks to satisfy arise from liabilities of Transdev as Seller that are not Assumed Liabilities, entitle WHC to indemnification from Transdev under Section 7.2(c)." ECF No. 1 at ¶ 44.

"To state a claim for breach of contract, the plaintiff must show that the defendant owed him a contractual obligation and that the defendant breached that obligation." *All Weather, Inc. v. Optical Sci., Inc.*, 443 F.Supp.3d 656, 666 (D.Md. 2020). Further, "[t]he claim must 'allege with certainty and definiteness facts showing a contractual obligation.'" *Yarn v. Hamburger L. Firm, LLC*, No. RDB-12-3096, 2014 WL 2964986, at *3 (D.Md. June 30, 2014) (quoting *RRC Ne., LLC v. BAA Md., Inc.*, 994 A.2d 430, 442 (Md. 2010)).

Here, Defendant's motion fails as to Plaintiff's breach of contract claim for similar reasons it fails as to Plaintiff's request for declaratory judgment. Reviewing the above exhibits, and drawing all inferences in Plaintiff's favor, Plaintiff's complaint contains well-plead facts suggesting that indefinite payments on the 2018 Promissory Note were not an assumed liability under the Asset Purchase Agreement and that Defendant Transdev agreed to indemnify Plaintiff for any such liabilities. *See* ECF No. 1 at ¶ 44; ECF 1-3 at 23.

To be sure, Defendant argues that Plaintiff's interpretation of various contract provisions would render portions of the agreement superfluous, contrary to Maryland law. *See* ECF No. 23-1 at 6-7. At the same time, Plaintiff correctly points out that "Courts in

11

Maryland follow the law of objective interpretation of contracts, 'giving effect to the clear terms of the contract regardless of what the parties to the contract may have believed those terms to mean.'" *United Servs. Auto. Ass'n v. Riley*, 393 Md. 55, 79 (2006) (quoting *Towson University v. Conte*, 384 Md. 68, 78 (2004)). Plaintiff is also correct in their understanding of the "liberal pleading standard at issue on this motion." *See* ECF No. 35 at 9. Accordingly, Defendant's motion is denied as it relates to Count II of Plaintiff's complaint.

### III. Unjust Enrichment

In their motion, Defendant claims that Count III of Plaintiff's complaint fails as a matter of law. In addition to the reasons why Defendant believes Plaintiff's entire Complaint should be dismissed, Defendant reasons that Plaintiff cannot claim to be a victim of unjust enrichment when a valid underlying contract exists. ECF No. 23-1 at 10. In other words, if Plaintiff claims that the contract at issue is valid, and grants them certain rights under its plain terms, then Plaintiff cannot further argue that the agreement represents one of unjust enrichment on the part of Defendant. *See FLF, Inc. v. World Publications, Inc.*, 999 F.Supp. 640, 642 (D.Md. 1998) ("It is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties."); *see also Cnty. Comm'rs v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 101 (2000) ("We hold that, generally, quasi-contract claims such as quantum meruit and unjust enrichment cannot be asserted when an express contract defining the rights and remedies of the parties exists.").

On the other hand, Plaintiff claims in their response that Count III of their complaint is, at least in part, an exercise in alternative pleading. ECF No. 35 at 12-14. Specifically, Plaintiff reasons that while their primary remedy against Defendant operates pursuant to the indemnification provisions of the Asset Purchase Agreement, "the unjust enrichment claim nevertheless addresses injuries and losses by third-party BCBSC to the extent, if any, that they are not covered in their entirety by Transdev's indemnification obligations[.]" *Id.* at 13.

Still, relevant caselaw on this issue remains clear. In their complaint, Plaintiff alleges the Asset Purchase Agreement "is a valid and enforceable contract." ECF No. 1 at ¶ 63. According to Plaintiff, these rights include their rights to indemnification for any unassumed liabilities arising out of the Asset Purchase Agreement. *Id.* at ¶ 64. Thus, because Plaintiff alleges the existence of a valid contract here, it cannot further argue a claim of unjust enrichment against Transdev related to the same subject matter. *See, e.g., FLF Inc.*, 999 F.Supp. at 642; *J. Roland Dashiell & Sons, Inc.*, 358 Md. at 101. Accordingly, this Court grants Defendant's motion for judgment on the pleadings as it relates to Count III of Plaintiff's complaint.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, Defendant's Motion (ECF No. 23) is GRANTED as to Count III of Plaintiff's Complaint and DENIED as to Counts I and II of Plaintiff's Complaint. A separate Order will follow.

Date: 13 September 2024

A. David Copperthite
United States Magistrate Judge